IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | Case No.:  20-10004-EFM |
| | ) | |
| JAMES SHAW, | ) | |
| | ) | |
| *Defendant*. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court upon Defendant James Shaw's Motion for Production of Documents and Objects, pursuant to Fed. R. Crim. P. 17(b) and (c) ("Motion").[1]  This Rule authorizes the Court to issue subpoenas for witnesses to produce documents and other objects as ordered.  Rule 17 motions are routinely made to the Court in cases where counsel has been appointed, as the Rule provides that in such cases the government will pay the costs. Commonly, the Court grants such requests in the ordinary course of case management without objection (indeed, such requests are often made ex parte), but the Rule does provide that the Court may quash or modify the subpoena if compliance would be unreasonable or oppressive. The request for production made in the Rule 17 motion in this case was most unusual (as discussed in more detail below).  The Motion was not made ex parte or under seal, and a copy was provided to the United States Attorney's Office.  That Office, as well as the jail to which the subpoena was intended to be issued, have filed responses and objections to the issuance of the subpoena.  It should be noted that the motion has not been granted, the subpoena has not been issued, and therefore motions to quash would be premature.  Instead, in accordance with Rule 17(c)(2), the Court is being asked to modify the subpoena before it is issued.

---

[1] Doc. 25.

## BACKGROUND

Before proceeding further, some background context in this case is in order.  James Shaw was indicted by the Grand Jury early this year on two counts of possession with intent to distribute a controlled substance, in violation of 18 U.S.C. § 841; one count of possession of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g).  He made his first appearance in front of a United States Magistrate Judge on March 16, 2020, at which time that Judge issued an order of temporary detention.[2]

Shaw immediately filed a motion for release.[3] The motion recited that Shaw was 68 years old, suffering from chronic obstructive pulmonary disease (COPD) and immunosuppression from chemotherapy due to his lung cancer, and thus was categorized by the Center for Disease Control and Prevention as at risk for contracting COVID-19.[4] Therefore, the motion sought release "to safeguard himself on house arrest."  The motion assured the Court that because, from Shaw's perspective, not only his liberty but his life was at risk, he had a "powerful incentive to abide by any release conditions the Court may impose."

Following a prompt detention hearing, on March 18, 2020, the Magistrate Judge overruled the United States' motion for detention, and released Shaw on conditions.  Those conditions included a $25,000 unsecured bond, 24-hour home incarceration, location monitoring, and standard requirements to submit to supervision by the United States Pretrial Services office. Although the record does not clearly establish the rationale of the Magistrate Judge for granting release, as the only grounds argued in Shaw's motion for release were his heightened risk of

---

[2] The charges with which Shaw was indicted gave rise to a presumption of detention.

[3] Doc. 9.

[4] The Court takes judicial notice that these events occurred as the entire nation was at the outset of shut down orders and other preventive measures designed to slow the spread of the infectious COVID-19.

contracting the COVID virus, it is safe to assume that the Judge's decision was influenced largely if not solely by that factor.[5]

Less than two months later, a petition for action on conditions for pretrial release was filed in Shaw's case, alleging that Shaw had left his residence without authorization and was not reachable by his cell phone, and that he had been arrested by the local police on felony charges of aggravated assault and criminal damage to property.[6] Shaw was arrested, and a bond revocation hearing was held. While Shaw did not stipulate to the allegations as stated in the petition, he did stipulate that he was away from his home without permission. Therefore, on May 18, 2020, his bond was revoked and he was ordered detained.

On May 20, 2020, the Federal Public Defender's Office filed the Motion that is the subject of this Order, on behalf of its client Shaw. That motion requested a subpoena directed to the Captain of the Harvey County (Kansas) jail, the detention facility where Shaw was being held following the revocation of his bond, and that the Captain be required to produce the following materials or items:

> 1.      The inmate population of the facility on each day from March 30, 2020, to the day prior to the date of production.
>
> 2.      The number of persons discharged and admitted between March 30, 2020, and the day prior to the date of production, and which facilities they were admitted from, as applicable.

---

[5] In fact, the Court would note that Shaw's motion for release made no arguments regarding his likelihood to appear as required nor whether his release would present a danger to the community; the types of arguments typically made in a release motion.

[6] Doc. 16.

3.      The number of male and female detainees housed in single-bed cells, and the number of males and females housed in multiple bed areas, including dormitory-style pods.

4.      The number of staff, both part-time and full-time, currently working within the facility (excluding open, unfilled positions) as of the date of this filing, May 20, 2020.

5.      The number of medical staff, both part-time and full-time, currently working within the facility (excluding open, unfilled positions) as of the date of this filing, May 20, 2020.

6.      The availability of personal protective equipment[7] (PPE) (currently and going forward), policies regarding PPE use, and whether this equipment is available to medical staff, general staff, and/or detainees.

7.      The number of COVID-19 tests that are available on-site as of the day prior to the date of production.

8.      The number of detainees and staff tested for COVID-19 and the results as of the day prior to the date of production.

9.      The number of detainees and staff presumptively COVID-19 positive but have not been tested as of the day prior to the date of production.

10.     The number of male and female detainees in isolation or quarantine due to COVID-19 symptoms, recent travel, or exposure to someone who was COVID-19 positive. If isolated or quarantined, whether they are in individual isolation or quarantine or in a double-bed cell or dorm setting with shared communal areas. For the housing of those at high-risk of infection, whether that pod has outside ventilation or negative pressure ventilation.

11.     The number of detainees treated or tested for COVID-19, or presumptive COVID-19 symptoms, outside of the facility.

12.     Any changes or updates within the last 21 days to the written policies relating to protocol or capacity to manage a COVID-19 outbreak with the facility.

13.     The dimensions of a two-bed cell.

14.     For dormitory-style pods, the number of detainees per pod and the dimensions of the shared area.

---

7   Specifically including availability of N95 respirators, facemasks, eye protection, gloves, gown/coveralls. https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf.

15.     Copies of any written information provided to inmates regarding symptoms of COVID-19.

16.     Copies of any written information provided to inmates regarding COVID-19 prevention techniques, including social distancing.

17.     Copies of any written information provided to inmates regarding reporting COVID-19 symptoms.

18.     Copies of any written policies requiring staff or inmates to use PPE.

19.     Copies of any written policies requiring staff or inmates to implement social distancing or other COVID-19 prevention techniques.

20.     Copies of any written policies requiring staff to sanitize, disinfect, or otherwise clean inmate cells, pods, or other common areas.

21.     Copies of any written policies requiring staff to sanitize, disinfect, or otherwise clean staff or facility operational areas.

22.     Copies of any written information provided to inmates with instructions how to request PPE.

23.     Copies of any written information regarding policies for the implementation of quarantine areas.

24.     Copies of any written policies regarding the admission of new inmates created or updated after January 1, 2020.

25.     Inventory reports for Harvey County Jails on hand supplies of: hand sanitizer, liquid soap, bar soap, toilet paper, facemasks, disinfectant, gloves between May 1, 2019, and the day prior to the date of production.

26.     Copies of any written information provided to inmates regarding the process to file a grievance regarding lack of COVID-19 related prevention measures.

In support of this request, the Motion recited facts and arguments relating to COVID-19, and argued that the information requested would "counter the Government's claims and establish a specific factual basis for the Court to consider the defendant's release."  Further, as the Motion noted that the information and material sought here would pertain to every client of the Federal Public Defender detained at the Harvey County Jail, it sought the Court's permission to use the

information obtained for every such client in each instance where it was relevant to any claim for relief, whether release from custody or otherwise.

Due to the unusual nature of this request, the Court set the matter for hearing, scheduled for June 16, 2020.

Counsel for Harvey County Jail entered their appearance on behalf of the Jail as "Objector" and filed Objections to the motion.  The Objection noted first that Harvey County (the political unit, not the jail) has identified only thirteen confirmed or probable cases of COVID-19; far fewer than the over 600 cases in Sedgwick County.  Notably, Sedgwick County is where Shaw resided while on bond, and where he violated his bond conditions.  More relevantly, the Objection reported, there have been no positive cases related to any staff or inmate at the Jail, nor any presumptive positives among them, nor any who are being treated for the virus.

Substantively, the Jail's Objection noted that Rule 17 subpoenas are not intended to provide a means of discovery for criminal cases, but provide a "compulsory process for securing specific, identifiable evidence for trial."[8]   The Jail argued that the subpoena failed the "relevancy" test under *Nixon*,[9] because despite the Motion's assertion that the requested information would counter the government's claims and establish a factual basis in support of Shaw's release, there is in fact no motion for release (or for reconsideration of detention) of Shaw pending.  The Jail's Objection also contended that the Motion failed to make any factual showing that Shaw's personal health or safety was being jeopardized by his detention in the Harvey County Jail; that the facts of the virus' status in Harvey County generally, and in the Jail specifically (especially in contrast to Sedgwick County, where Shaw requests he be released),

---

[8] *United States v. Jackson*, 155 F.R.D. 664, 667 (D. Kan. 1994); *see also, United States v. Nixon*, 418 U.S. 683, 698 (1974).

[9] *Nixon*, 418 U.S. at 700 (1974)

demonstrate that such a showing cannot be made.  Instead, the Jail's Objection argued, the request is nothing more than a prohibited "fishing expedition."[10]

Further, the Jail objected that Rule 17(c) requests are only properly used to secure for trial certain specific documents or sharply defined groups of documents.[11]  The documents for which the Motion requested a subpoena, in contrast, is a lengthy and broad request for documents which may not exist, and for which the relevancy and admissibility is not explained or addressed.

Finally, the Jail objected that the request is unreasonable and oppressive, in violation of Fed. R. Crim. P. 17(c)(2).  Compilation of the requested information, the jail contends, would require the Jail's limited staff to be diverted from their regular essential duties to discover and compile a response to this broad request.  Moreover, the Jail argues, the request for testing and treatment of all of the Jail's inmate populations may violate prohibitions against disclosure of information protected under the Health Insurance Portability and Accountability Act of 1996, and the Americans With Disabilities Act of 1990.

The United States also filed a Response to the Motion.  First, the United States acknowledges that its mere status as the plaintiff/prosecutor in this case does not grant it standing to quash a subpoena served on a nonparty.[12]  However, because the Motion specifically requests that the documents obtained from the response to the subpoena be admissible in other cases, and because the information sought relates to all defendants without regard to whether or not the

---

[10] *Nixon*, at 699-700 (stating that before the trial court authorizes a Rule 17(c) subpoena, the requesting party must establish that the documents are evidentiary and relevant, may not be otherwise procured reasonably in advance of trial, are essential for preparation for trial and to not delay the trial, and must be made in good faith and not as a general fishing expedition).

[11] *United States v. King*, 164 F.R.D. 542, 545 (D. Kan. 1996).

[12] As noted earlier, because the subpoena has not issued, the Jail and the United States are not technically filing motions to quash the subpoena; but rather, objections to the issuance of the subpoena seeking at a minimum modifications thereof.  Substantively, though, the Court is treating these objections under the same law and analysis that would be applied to a motion to quash.

defendants/inmates are represented by the Federal Public Defender, the United States requests the Court find that it does have standing to object to the Motion. Alternatively, if the Court does not find that the United States has standing to object, it requests that the Court consider its response as that of an interested party. At the June 16 hearing, Shaw argued that the United States lacked standing.[13] The United States conceded that it may not clearly meet the requirements for standing in this case, but argued that the extraordinarily broad requests of material, and the indication that Shaw's counsel, the Federal Public Defender's Office, intended to use the material obtained from the subpoena for every other federal defendant it represented who was held at the Harvey County jail, indicated that it had legitimate interests which at a minimum entitled it's concerns to be heard. The Court found that, under the unique nature of this request, the United States does have interests which the Court, at a minimum, should hear. Having so decided, the Court need not reach the issue of standing.

The United States' Response makes many of the same arguments made by the Jail in its objection. Going further, the United States argues that the test of relevancy and admissibility of the requested documents relates to the offenses charged in the indictment.[14] The United States' Response also argues that the requirement that Rule 17(c) subpoenas be limited to specific documents or sharply defined groups of documents should be defined as documents for the trial.[15]

The United States' Response argues that the relevance of the 26 categories of information sought to any motions which Shaw may file is not explained. Moreover, it argues Shaw was previously released (notwithstanding a presumption of detention) based on arguments related to

---

[13] *United States v. Daniels*, 95 F. Supp. 2d 1160, 1164 (D. Kan. 2000) (stating that the government only has standing to move to quash a subpoena issued to another if it can claim privilege, proprietary interest in the requested material, or where the subpoena otherwise infringes upon the government's legitimate interests).

[14] *United States v. Anderson*, 31 F. Supp. 2d 933, 944 (D. Kan. 1998), citing *Nixon,* 418 U.S. at 700.

[15] *King*, 164 F.R.D at 545.

the pandemic, and rather than stay home and shelter in place as ordered, he promptly left his house without authorization.  Given Shaw's history of performance while on bond, and the legal factors governing release, the United States argues that none of the 26 categories of information the Motion seeks to subpoena would be relevant in another detention hearing.

## ANALYSIS AND ORDER

At the June 16 hearing, the Court requested the parties address certain threshold issues (in addition to the standing of the Untied States).  First was whether Rule 17(c) requests were limited to material admissible for trial purposes.  Rule 17(c) provides in relevant part:

> **(1)** **In General.** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates.  The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.  When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.
>
> **(2)** **Quashing or Modifying the Subpoena.** On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

The Court also requested the parties' position on whether the absence of a pending motion for reconsideration of Shaw's detention made the Motion premature or moot.  Shaw argued that Rule 17(c) should not be interpreted so narrowly as to be limited only to matters admissible at trial, and that notwithstanding the lack of a pending motion (regarding detention), there was a pending case.  The United States largely agreed with Shaw on these two issues,[16] but the Harvey County Jail disagreed, arguing that in this context the requested subpoena was little more than a fishing expedition.  The Court agrees that Rule 17(c) requests should not be narrowly limited to material admissible at trial, so long as they otherwise meet the standards of relevancy, admissibility and specificity.[17]  Although a pending motion setting forth a claim for

---

[16] The Court notes that this position is somewhat at variance with the position of the United States in the pre-hearing briefing, where it argued that material sought under a Rule 17(c) subpoena may be "used only to secure specific documents or 'sharply defined' groups of documents for the trial."  Doc. 26, at p. 9.

[17] *United States v. Nixon*, 418 U.S. at 700 (1974).

review or reconsideration of Shaw's detention might make analysis of the Motion clearer, the Court also agrees with Shaw that the lack of such a motion is not fatal to the requested subpoena.

Substantively, all parties agree that the standards governing whether a trial court may issue a requested subpoena were set forth in the case of *United States v. Nixon* as follows:

(1)     The documents are evidentiary and relevant;

(2)     The documents are not otherwise procurable reasonably in advance of trial by exercise of due diligence;

(3)     The party requesting the documents cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and

(4)     The application is made in good faith and is not intended as a general "fishing expedition." [18]

Shaw argued that, given the status of the COVID-19 pandemic in general, and his medical condition in particular, this information was relevant for his detention purposes. Information relating to Shaw's conditions of confinement, especially with an eye towards the prevention of a COVID-19 infection, bear on the risks he faces from continued confinement.

The Harvey County Jail, however, claimed that the material subpoenaed was not in support of a motion, but was speculative and designed to build a case for a motion. Thus, it amounted to little more than a fishing expedition. The Jail also argued that the test of relevance must be weighed against how unreasonable or oppressive the request is, and argued that the requested subpoena failed the test of specificity. The party seeking the motion must be able to describe specific documents or specific kinds of documents.[19]   Where a subpoena does not

---

[18] *Id.* at 699-700.

[19] *Anderson*, 31 F. Supp. 2d at 945.

specify the items that are requested, or even whether the requested items exist, denial of a Rule 17(c) request is appropriate.[20]   Finally, referencing the affidavit of Scott Van Horn, Captain of the Harvey County Jail, the Jail argued that Shaw's concerns about his susceptibility to contracting the COVID-19 virus was being adequately addressed by the Jail's actions of housing Shaw in a single-cell unit, keeping him isolated from the general population, and providing him with a private sink, toilet, shower, and specialized ventilation system.

The Court has several concerns about the proposed subpoena.  First, it notes that, while a motion for reconsideration of the order of detention has not been filed, the requested items obviously all relate to that issue; are in support of a potential argument that Shaw should be released on conditions because he is unusually at risk of infection of the COVID-19 virus.  But Shaw previously made this argument to the Court successfully, and was on that basis released on conditions.  Those conditions, in addition to the ones usually imposed on released defendants, were, at his request, also designed to protect him from the virus.  *But Shaw quickly failed to abide by those conditions.*  Given that he is now seeking material in support of a position on which he earlier succeeded, but for which he promptly defaulted, the Court has serious reservations that these matters now meet the relevancy standard of *Nixon*.  The issue, should Shaw's release status be again presented to the Court, is not whether Shaw merits additional protection from the virus; he earlier made that argument, won that argument, and squandered that win by his subsequent actions.  Instead, the issue would be the more typical arguments made at detention; whether he had a release plan that assured he would appear as required, would not present a danger to the community, and that he could abide by that release plan despite his prompt failure to do so a mere month ago.  None of the items sought in this Motion are relevant

---

[20] *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002).

to those issues.  However, while the Court harbors serious concerns about these matters, it has concluded that now is not the time to prejudge any future request Shaw may make for release.

The Court's next concern is that much of what is requested is *information*, not "books, papers, documents, data, or other objects."[21]  A motion for production of such items cannot require that items responsive to the requested information be created; only that such items as may exist be turned over.  This standard is complicated by the fact that most 21st century businesses maintain not paper documents, but electronic data.  Reports from that data may be generated easily by the appropriate computer commands.  But to the extent the requested subpoena requests items which are not already in existence or immediately capable of being generated by electronic reports, but which require compilation from other data and preparation of a report, or "document," responsive to the request, the Court holds that the party subpoenaed is not required to prepare such a response.  A subpoena to produce such items does not require the party to prepare such items; only to turn over such items or reports which exist or for which electronic reports are able to be generated without such compilation.

Next, the Court finds that to the extent the subpoenaed material relates to individuals other than Shaw, it fails the relevance test and the specificity test.  It was noted at the hearing that requests were made for time periods pre-dating Shaw's detention at the Harvey County Jail, and for the medical status of detainees other than Shaw.  Such requests exceed the boundaries of proper Rule 17(c) requests.

Finally, given the nature of the entity subpoenaed, the Court finds that to the extent the subpoena requests items whose production would create a security threat,[22] or would implicate

---

[21] Fed. R. Crim. P. 17(c).

[22] The parties at the hearing discussed that, for instance, blueprints of the jail would be responsive to request number 13, but the production of the jail's blueprints would obviously create a potential security threat.

privacy interests of detainees other than Shaw,[23] such items need not be produced.  With respect to the privacy interests, if documents, reports, or other items currently in existence can be sufficiently redacted to respond to the requests, then those items may be turned over in response to the subpoena.  But is such redactions would render the items meaningless, to the extent that the redacted item was no longer responsive to the request, then requiring its production would be futile.

With these guidelines, the Court rules on the requested items in the Motion as follows: Frist, the Jail agreed that requests number 15-24, and 26, request items which are in existence. If such items exist, they should be turned over pursuant to the subpoena; if they do not exist, then a simple reply in that regard is sufficient.  The Court finds that request number 12 also falls into this category, as does the portion of request number 6 inquiring about policies regarding PPE use.  For requests 1-11 (except the portion of 6 just noted), 13, 14, and 25, the Court finds that Harvey County Jail should turn over any existing documents or readily producible reports which are responsive to these inquiries, but is not required to otherwise create or compile documents or reports to respond.  To the extent the Harvey County Jail has documents or reports which exist or are readily producible from which answers to these questions could be derived by the requesting party, the Harvey County Jail is ordered to redact such reports to protect the privacy interests of individuals other than Shaw, and turn the redacted items over to the requester; provided, however, that if such items would contain no useful, discernable information following redaction, then the Harvey County Jail is not required to do so.

---

[23] It was also noted at the hearing that much of the items requested by the Motion may not exist in a generic, anonymous format, but relate to information which the Harvey County Jail would certainly have. These include requests such as requests 8-11.  Any documents or reports the Jail has in current existence which is response to those requests may likely include the names and personal identifiers of other detainees, and the production of such items would implicate those other detainee's privacy interests.

**IT IS THEREFORE ORDERED** that Defendant's Motion for production of Documents and Objects (Doc. 25) is **GRANTED IN PART AND DENIED IN PART**, as set forth in this Memorandum and Order, and the Court will issue a modified subpoena accordingly.

**IT IS SO ORDERED**.

Dated this 18th day of June, 2020.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE